UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSHUA S.,                              )
                                        )
        Plaintiff                       )
                                        )
v.                                      )        1:20-cv-00427-JDL
                                        )
KILOLO KIJAKAZI, Acting Commissioner    )
of Social Security,                     )
                                        )
        Defendant                       )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity.  Defendant, therefore, denied Plaintiff's request for disability benefits.  Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the January 29, 2020 decision of the Administrative Law Judge.  (ALJ Decision, ECF No. 10).[1]  The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of borderline personality disorder, depressive disorder and post-traumatic stress disorder (PTSD).  (R. 21.)  The ALJ further found that despite his impairments, Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but was limited nonexertionally to simple, unskilled work in a low stress job with only occasional decision making, and only occasional changes in the work setting; he should have no interactions with the public, but can have occasional interaction with coworkers and occasional supervision, but should have no tandem tasks.  (R. 23.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including representative occupations of material handler, vehicle cleaner, and hand packager.  (R. 26.)  The ALJ determined, therefore, that Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401

(1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) in his evaluation of the opinion evidence, (2) when he determined that Plaintiff's dissociative identity disorder (DID) was not a medically determinable impairment, and (3) in his assessment of Plaintiff's mental health treatment, including Plaintiff's failure to take medication.

## A. Opinion Evidence

### 1. John Hale, Ed.D.

The ALJ found the opinion of consultative examiner John Hale, Ed.D., who assessed Plaintiff in January 2018 (R. 402-06), to be persuasive, noting that Dr. Hale's opinion was consistent with his treatment notes.  (R. 25.)  The ALJ further explained that while the notes reflect Plaintiff's ongoing mental health symptoms, they also revealed Plaintiff's ability to concentrate on video games and to engage with others both in person and online, despite Plaintiff's lack of medical treatment.  (*Id.*)  The ALJ's assessment of Dr. Hale's opinions is supported by the record.

Plaintiff, however, contends the ALJ failed to address Dr. Hale's complete opinion, particularly Dr. Hale's statement regarding Plaintiff's occupational adjustments:

> [H]e likely would have difficulties consistently following work-related rules and authorities.  His coping skills at times seem to be somewhat primitive and can become aggressive and overreactive and potentially assaultive.  His

3

> struggles socially and coping with authority likely would limit his ability to be dependable and reliable.   His ability to concentrate, memory, and understanding information appear to be intact.  He seems, however, to likely have problems being adaptable and flexible, as well as deal with normal pressures and stressors in a work environment.  He likely would be unable to consistently persist at a reasonable rate when asked to carry through on work instructions and tasks.

(R. 406.)

Although the ALJ might not have commented upon each of Dr. Hale's statements, the ALJ limited Plaintiff to no interaction with the public, only occasional interaction with coworkers and no tandem tasks, and occasional supervision.  (R. 23.)  The ALJ also acknowledged Plaintiff's potential difficulties in adapting himself, persistence and pace, and dealing with work stress, by limiting him to simple, unskilled work in a low stress job with only occasional decision making and changes in the work setting.  (*Id*.)  In short, the ALJ adequately addressed the concerns raised by Dr. Hale. *See Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017 WL 2731308, at *3 (D. Me. June 25, 2017) ("contrary to the plaintiff's contention, the ALJ did acknowledge the plaintiff's likely difficulties with supervisors and coworkers … by providing not only quantitative restrictions that he was to have only occasional contact with supervisors and coworkers …, but also qualitative ones prohibiting him from working in a teamwork or collaborative environment.")

### 2.  Kim Tousignant, Psy.D

In a mental impairment questionnaire completed in November 2019, Plaintiff's treating psychologist, Kim Tousignant, Psy.D., opined that Plaintiff had marked and extreme impairments in understanding, remembering or applying information, in interacting with others, in concentrating, persisting or maintaining pace, and in adapting

and managing himself.[2]  (R. 427-28.)  Dr. Tousignant noted Plaintiff's Dissociative Identity Disorder (DID) diagnosis and found that Plaintiff would, on average, be absent from work more than four days per month.  (R. 428-29.)  The ALJ found Dr. Tousignant's opinion to be unpersuasive, explaining that the level of impairment she found is not substantiated by the medical record, noting that Plaintiff takes no medication for his mental health impairments and that he shops, plays D&D, goes to bars, church, funerals, and interacts with others online.  (R. 25.)

The ALJ supportably discounted Dr. Tousignant's opinions. The record, which reflects Plaintiff's activity level described by the ALJ and Plaintiff's ability to interact with health care providers,[3] is inconsistent with Dr. Tousignant's findings.  As the ALJ observed, Dr. Tousignant's finding of marked and extreme limitations in concentrating, persisting, and maintaining pace is undercut by treatment notes recording normal attention span and concentration, Plaintiff's performance during the consultative examination, and Plaintiff's documented ability to attend treating appointments, engage for significant periods of time on the internet, and his listening to audio books and music.  (R. 23.)  The

---

[2] Dr. Tousignant found that Plaintiff had marked limitations in making judgments, responding appropriately to changes in routine work settings, understanding and responding to social cues, completing tasks in a timely manner, and changing activities without being disruptive; and extreme limitations in making judgments on complex work-related decisions, interacting appropriately with the public, coworkers and supervisors, responding to requests, criticism and correction, keeping social interactions free of excessive irritability, sensitivity or argumentativeness, ignoring or avoiding distractions while working, responding appropriately to demands, adapting to changes, managing mental health symptoms and maintaining wellbeing in a work setting, and controlling impulsivity and maintaining behavior appropriate for a work setting.  (R. 427-28.)

[3] The ALJ cited Dr. Hale's observations that Plaintiff's thoughts were clear, logical, and well-associated to the questions asked and the lack of concern among Plaintiff's treating providers regarding Plaintiff's ability to understand his treatment. (R. 22.)

ALJ also recognized that while Plaintiff occasionally has issues with hygiene or dressing appropriately for the weather, he also attends his treatment appointments and has been an administrator of an online forum.  (*Id*.)  In sum, the record is consistent with and supports the ALJ's assessment of Dr. Tousignant's opinions.[4]

## B.  Dissociative Identity Disorder

At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but this burden is de minimis, and is designed merely to screen out groundless claims.  *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123-24 (1st Cir. 1986).  The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85-28).  In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis.  *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521.  *See also* Social Security Ruling 16-3p, 2017 WL 5180304, at *3 ("An individual's symptoms, such as pain, fatigue, shortness of breath, weakness,

---

[4] While an ALJ must consider the listed factors – supportability, consistency, relationship with the claimant, specialization, and other factors – "as appropriate[,]" *id*., § 416.920c(a) & (c), he or she need only explain his or her consideration of the two "most important factors[,]" supportability and consistency, and "may, but [is] not required to, explain how [he or she] considered" the remaining three factors.  *Id*., § 416.920c(b)(2); *see also Ryan M. St. P. v. Saul*, No. 2:19-cv-00169-NT, 2020 WL 1672785, *2 (D. Me. April 6, 2020).

nervousness, or periods of poor concentration will not be found to affect the ability to do basic work-related activities for an adult … unless medical signs or laboratory findings show a medically determinable impairment is present.")  A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity.  *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014).  Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment.  *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.  In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe."  20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec*., 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5.  *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

7

The ALJ acknowledged that Plaintiff had been diagnosed with Dissociative Identity Disorder (DID) by his treating psychologist, Dr. Tousignant, but did not find that DID was a medically determinable impairment from which Plaintiff suffers.  (R. 22.)  In support of his conclusion, the ALJ supportably cited and relied on the testimony of medical expert, James Claiborn, Ph.D., who testified in 2015 at a prior hearing on an earlier claim filed by Plaintiff that Plaintiff does not meet the DSM diagnostic criteria for DID.  (*Id*.)

Even if the ALJ should have found DID to be a medically determinable severe impairment, Plaintiff has not demonstrated that the condition would require any functional limitations beyond those assessed by the ALJ, who expressly stated that he considered all of Plaintiff's symptoms in formulating the Plaintiff's RFC.  *See, e.g., Carlton v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) (it is the plaintiff's burden to supply the medical evidence needed to establish the degree to which [his] claimed impairments limit her functional capacity); *see also Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) ("the important point here is that the plaintiff does not point to any evidence that there was any further limitation on [his] [functional] ability …, and the burden of proof rests with the claimant through the establishment of an RFC").  In other words, Plaintiff has not established that a severe impairment finding would result in any additional limitations on his work capacity.  Accordingly, even if the ALJ erred in the step 2 assessment, the error would not warrant remand.

## C.  Failure to Take Medication

Plaintiff maintains that in the assessment of the degree of Plaintiff's impairment, the

ALJ improperly relied on Plaintiff's failure to treat his mental health symptoms with medication. The ALJ found that Plaintiff's claims about the intensity, persistence, and limiting effects of his symptoms were not consistent with Plaintiff's conservative treatment or the medical record. The ALJ wrote:

> The claimant has treated his mental health impairments with counseling, however, he is not treating with medication. The claimant's psychiatrist[5] testified that she has recommended medication, but that [Plaintiff] has declined. This refusal to take medication indicates that [Plaintiff]'s impairments are less limiting on his daily functionality than alleged. If [Plaintiff]'s symptoms were as limiting as alleged, it is reasonable to assume that he would seek out, and comply with all recommended treatment.

(R. 24.) The ALJ also noted Plaintiff's failure to take medication as among the factors he used to assess the relative weight to afford the findings of Plaintiff's treating psychologist and the consultative experts. (R. 25.)

Social Security Ruling 16-3p "provides guidance about how [components of the Social Security Administration will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." SSR 16-3p (S.S.A.), 2017 WL 5180304, at *1. The Ruling states that, in evaluating claims, "if the individual fails to follow prescribed treatment that might improve symptoms," the ALJ "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* at *9. The Ruling also provides that the ALJ "will not find an individual's symptoms inconsistent with the evidence … on this

---

[5] The person to whom the ALJ refers (Kim Tousignant, Psy.D) is a psychologist, not a psychiatrist. The ALJ later referred to Dr. Tousignant as a psychologist. (R. 25.)

basis without considering possible reasons" for the failure to comply with treatment, and that the ALJ "may need to contact" the claimant or, at the hearing level, ask why the claimant has failed to comply.  (*Id.*)

The Ruling lists factors the ALJ may consider in assessing a claimant's failure to comply with treatment, including whether the side effects are less tolerable than the symptoms, and/or whether the person might not understand the appropriate treatment due to mental limitation(s), or, because of a mental impairment, might not be aware that he or she has a disorder that requires treatment.  *Id*. at *10.  The Ruling further provides that the ALJ "will explain how [he or she] considered the individual's reasons in [his or her] evaluation of the individual's symptoms."  (*Id.*)

At the hearing, the ALJ had the following exchange with Plaintiff:

Q:  Okay.  Now, in terms of medications, what are you on for meds right now?
A:  Right now Tylenol.
Q:  Okay.  Have you ever been on Risperdal or any anti-psychotics or anything like that, or no?
A:  They had me on Zoloft a while ago, and that didn't go well.

(R. 43.)  The ALJ referenced this testimony in his summary of Plaintiff's description of his symptoms and activities of daily living.  (R. 24.)

The ALJ also questioned Dr. Tousignant about Plaintiff's lack of medication:

Q:  So, how come he's not on any depression meds right now?  When I asked him what meds he's on, he's taking Tylenol.  Ordinarily I find having done this job for a while that people that have depression, severe depression, so severe that they can't function and they can't work, they take meds for depression.  How come he's not on any meds?
A:  Well, that's a question you really need to ask him, because I have consistently throughout recommended that he take medication.
Q:  Okay.  So basically, he has chosen not to follow your medical advice?

10

He's –
A:  Yes.  In terms of the medication piece.  I don't prescribe medication, because I'm a psychologist, but –
Q:  But you refer him to people that would prescribe it for him?
A:  Right.  And talk to him about it.
Q:  Do you think that if he were to take depression meds it would help with his depression?
A:  I think that it could.  I think that finding the right medication is often a challenge, and so people think that they're – they feel like they're being guinea pigs, and, you know, trying lots of things.  So he did – he went on I think once throughout our work he tried to take Zoloft.  And he was on it for two weeks, and he was highly suicidal and stopped taking it.  So, it would be important to figure out what medications would work right for him.
Q:  Okay.  But is that something you've had success in the past with?
A:  Oh, yeah.
Q:  Clients trying meds to control their psychological symptoms?
A:  Yeah.  And now they have – they even have genetic testing where you can determine which meds may or may not work well with the biology of his system.
Q:  Okay.

(R. 65-66.)[6]

While Ruling 16-3p might not require an ALJ to ask the claimant directly to explain the reasons the claimant has not complied with a prescribed treatment (i.e., an ALJ "*may need to*" to contact the individual or ask why at hearing), *see, e.g., Roxauna M. v. Berryhill*, No. 1:17-cv-00350-NT, 2018 WL 3493075, at *6 (July 20, 2018) (*aff'd*, Aug. 22, 2018), the ALJ must consider the possible reasons if an ALJ finds the claimant's failure to do so an important factor in discounting the claimant's subjective complaints.  Here, the ALJ did

---

[6] When Plaintiff's counsel asked Dr. Tousignant whether an ADHD medication would be helpful, she replied that she did, noting that Plaintiff told her that he had had some experience with those medications as a child and probably young teen, but he did not feel they helped.  (R. 66.)  She noted, however, that his report was not "necessarily a great indicator as to whether it was useful or not, because I haven't talked to the adults.  I haven't seen his records … as to whether they actually worked."  (*Id.*)

not ask Plaintiff why he did not follow his psychologist's recommendation.[7]  In addition, although Plaintiff's psychologist hypothesized as to why Plaintiff might not have followed through on her recommendation, she said, "you really need to ask him." (R. 65.)  The ALJ thus did not identify and assess the reasons Plaintiff did not follow the medication recommendation. Nevertheless, Plaintiff's failure to take medication was apparently a significant factor in the ALJ's assessment of Plaintiff's claim (R. 24; "This refusal to take medication indicates that [Plaintiff]'s impairments are less limiting on his daily functionality than alleged.  If [Plaintiff]'s symptoms were as limiting as alleged, it is reasonable to assume that he would seek out, and comply with all recommended treatment.")

The issue is whether the ALJ's failure to ascertain and discuss the reasons Plaintiff "refused" to follow his psychologist's medication recommendation warrants remand.  The court's decision in *Flowers v. Comm'r Soc. Sec*., Civil Case No. CCB-17-3043, 2018 WL 3068682 (D. Md. June 21, 2018), is instructive.  In *Flowers*, neither the ALJ nor counsel asked the plaintiff to explain the reasons for his noncompliance with the prescribed medications for his bipolar disorder and schizoaffective disorder.  2018 WL 3068682, at *2.  The ALJ nevertheless referenced the plaintiff's "noncompliance in at least eight separate paragraphs of his opinion, and repeatedly suggested that noncompliance with medications essentially caused" the plaintiff's mental health symptoms.  *Id*. at *2.  The

---

[7] Plaintiff's testimony that he was on Zoloft and "it didn't go well" was not in response to an inquiry as to why he was not taking prescribed medication or why he had not followed his psychologist's recommendation.

court found that,

> [i]n light of the degree of reliance on [the plaintiff's] noncompliance in the ALJ's opinion, the ALJ should have followed the dictates of SSR 16-3p to determine whether his noncompliance was willful or whether it was essentially a symptom of [the plaintiff's] severe mental health conditions. I therefore recommend remand to permit the ALJ to provide an appropriate analysis, incorporating the requirements of SSR 16-3p.

*Id*.

The court's reasoning in *Flowers* is sound. In this case, on multiple occasions, the ALJ referenced Plaintiff's failure to take medication as a factor in his assessment of Plaintiff's claim. Whether the ALJ could supportably conclude that if Plaintiff's "symptoms were as limiting as alleged, it is reasonable to assume that he would seek out, and comply with all recommended treatment," requires an assessment of Plaintiff's explanation for his failure to follow his psychologist's recommendation. (R. 24.) Because the ALJ, contrary to Ruling 16-3p, failed to ascertain and assess the reasons Plaintiff did not follow the recommendations and because the ALJ concluded that Plaintiff's failure to follow the recommendation was a material factor in the assessment of Plaintiff's claim, remand is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

(14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of October, 2021.